(No. 25790.-

CHARLES F. RYAN *et al.* Appellants, *vs.* MARY D. DENEEN
*et al.* Appellees.

*Opinion filed Dec. 12, 1940—Rehearing denied February 12, 1941.*

WALTER V. DYSERT, and JOHN E. STIPP, for appellants.

COSTIGAN, WOLLRAB & YODER, for appellees.

Mr. JUSTICE MURPHY delivered the opinion of the court:

Katherine Ryan died November 3, 1938, leaving appellants, Charles F. Ryan and William D. Ryan, sons of a deceased brother, and appellee Mary D. Deneen, the daughter of a deceased sister, her only heirs-at-law. An instrument dated June 2, 1925, purporting to be her last will was admitted to probate December 28, 1938. December 27, 1939, appellants began this action in the circuit court of McLean county to contest the probated instrument on the grounds of undue influence and lack of testamentary capacity. Mary D. Deneen, individually and as executrix, was named defendant. Before trial the court sustained appellees' motion to strike the allegations of undue influence. At the close of appellants' evidence a verdict was directed for appellees on the remaining issue of testamentary capacity and appellants have prosecuted this appeal.

The will disposed of real estate and personal property of the value of about $30,000. At the time of making the will testatrix resided with her brother, Matthew D. Ryan and appellee Mary D. Deneen, and she continued to reside in the same house until the date of her death. The will gave all the property to Matthew D. Ryan with the provision that if he predeceased the testatrix, one-half was to go to Mary D. Deneen, absolutely, and the other one-half, in trust, for the benefit of Matthew R. Gregory, a brother

of Mrs. Deneen. Provision was made for remainder over to Mrs. Deneen if Matthew R. Gregory died before the testatrix. Matthew D. Ryan and Matthew R. Gregory predeceased the testatrix, and Mary D. Deneen takes the whole of the property under the will.

Appellants contend the court erred in striking from the original and amended complaint the allegations of undue influence. The first allegation stricken was that Mary D. Deneen exercised "undue arts and fraudulent practices" and "resorted to falsehood and misrepresentation to induce the said Katherine Ryan to execute said instrument of writing and the said Katherine Ryan in executing the same, was, in fact, under improper restraint and undue influence from said arts and fraudulent practices of the defendant, Mary D. Deneen." The amended paragraph alleged that the testatrix was subjected to undue influence and threats by her brother, Matthew D. Ryan, and that he "threatened her by telling her that unless she made a will leaving everything to him, the remainder over to their niece and nephew, Mary D. Deneen and Matthew R. Gregory, and leaving nothing to plaintiffs [appellants] herein * * * that he, Matthew D. Ryan, would leave nothing to her;" that Katherine Ryan was of meek and humble character and controlled by Matthew D. Ryan, who was overbearing and dictatorial; that she acted only at the direction of Matthew D. Ryan, and that when the purported will was executed she was under the control of Matthew D. Ryan.

It is not sufficient to aver undue influence as a conclusion, but facts must be stated warranting the conclusion and must go to the extent of showing the testator was thereby deprived of his free agency. (*Ater* v. *McClure,* 329 Ill. 519; *Heavner* v. *Heavner,* 342 id. 321.) The allegation that the testatrix was under the control of Mary D. Deneen and Matthew D. Ryan and that the will was not that of the testatrix were mere conclusions of the pleader.

(*Heavner* v. *Heavner, supra.*) Furthermore, undue influence is that coercion which destroys the freedom of the testator and renders the instrument obviously more the offspring of the will of another, or other than his own. (*Miles* v. *Long,* 342 Ill. 589; *Hauptman* v. *Graehl,* 343 id. 128; *Johnson* v. *Farrell,* 215 id. 542.) The alleged threat in the amended paragraph is a mere statement that a reciprocal act would be withheld if the testatrix did not dispose of her property in the manner suggested. It intimated an offer of a reciprocal devise if she made such a will, and amounted to no more than persuasion. Mere persuasion or honest argument is not undue influence. (*Dickie* v. *Carter,* 42 Ill. 376; *Yoe* v. *McCord,* 74 id. 33; *Bevelot* v. *Lestrade,* 153 id. 625.) No other fact is alleged as to the charge of undue influence. The court properly sustained the motion to strike.

Appellants insist that the court erred in directing the jury to find the instrument was the will of Katherine Ryan and thereby finding for appellees on the issue of testamentary capacity. A motion to direct a verdict in a will contest is governed by the same rules which govern such motions in actions at law. The party resisting such motion is entitled to the benefit of all the evidence in his favor, and the only question, on review, is whether there is any evidence tending to prove the allegations in the complaint. *Ginsberg* v. *Ginsberg,* 361 Ill. 499; *Quathamer* v. *Schoon,* 370 id. 606; *Brownlie* v. *Brownlie,* 351 id. 72.

The evidence shows testatrix and her brother, Matthew D. Ryan, went to the law office of John J. Morrissey to have him prepare their wills. Morrissey had known them and their parents for many years and had transacted legal business for them. He was one of the subscribing witnesses to the will of testatrix. While testifying on the probate of the will in the probate court, the attorney for the appellants referred to a provision in the will which stated that testa-

trix had not overlooked or forgotten the fact that she had two nephews, (appellants,) sons of the deceased brother William, but because of "family reasons," she made the foregoing disposition of her property. On cross-examination Morrissey was asked if at the time of the preparation of the will testatrix disclosed what she meant by said clause and the use of the words "family reasons". His answer was: "Her father had made a will in which it is my recollection he left each of the two grandsons, [appellants] the children of his oldest son, $5 apiece and the boys refused to accept it because they regarded it as so small a gift that they refused to accept it. She had that in mind and she and her brother [Matthew D. Ryan] talked it over and they told me before that, but they repeated it again, that when the oldest brother married, the father and mother considered him—what we ordinarily say in the street language a skate—but they did not use that word. That the father gave the brother William what they considered was a fair share of their property at that time." At the beginning of the trial in the instant case, appellants offered in evidence a transcript of the cross-examination of Morrissey taken in the probate court with the foregoing statement therein. Objection was sustained to such offer and Morrissey was then called as a witness. The questions appellants propounded to him were of an impeaching character evidently intended for the purpose of laying a foundation for the introduction of the transcript of his testimony. The transcript was finally admitted for impeaching purposes.

Appellants now contend that the statement quoted from Morrissey's evidence showed that testatrix was at the time of the execution of the will suffering from two delusions: First, that she thought her brother, William Ryan, appellants' father, was a "skate" and, second, that he had received his full share of the estate of his parents. Appellants then offered proof of a large number of witnesses to

show appellants' father, William Ryan, was an upright, industrious and capable man, and that he had received nothing from his father's and mother's estate. Objection was sustained as to such offer and, no other evidence being introduced, the court directed a verdict for appellee.

Without considering the impropriety of undertaking to establish an insane delusion of the testatrix in the manner adopted by appellants or approving such procedure, or the weight of such testimony, it is sufficient to say the reference of Morrissey to William Ryan being a "skate" was not a statement that testatrix thought he was a "skate", but he was merely stating what testatrix had said was her father's and mother's opinion of him.

In general an insane delusion is a belief in a state or condition of things which no rational person would believe, (*Nicewander* v. *Nicewander,* 151 Ill. 156; *Snell* v. *Weldon,* 243 id. 496; *Owen* v. *Crumbaugh,* 228 id. 380;) but an insane delusion must be such an aberration as indicates a deranged condition of the mind as distinguished from a mere belief in the existence or non-existence of certain supposed facts based upon some sort of evidence. (*Owen* v. *Crumbaugh, supra.*) So far as the records show, the parents of testatrix may have considered their son William to have been a "skate", and may have communicated that feeling to the testatrix. At most, her belief would indicate a prejudice against appellants, even if it be inferred she visited the sins of their father upon them. Unkind or unjust remarks indicating a prejudice against the natural objects of the testator's bounty do not show he suffered from insane delusions. *Drum* v. *Capps,* 240 Ill. 524; *Schneider* v. *Manning,* 121 id. 376.

The belief of Katherine Ryan that appellants' father, William Ryan, had received a fair share of the property from his father, Owen Ryan, if William had in fact received nothing, was not such an aberration as indicates a

deranged mind. What is a fair share of property is purely a question of judgment and is a question upon which reasonably sane minds may differ.

All that appellants have shown in their effort to prove a lack of testamentary capacity is the statement of Katherine Ryan to the attorney who drew the will as her reason for omitting to provide for appellants. Morrissey stated on such cross-examination that Katherine Ryan was normal mentally and physically. We find no evidence tending to prove the allegations of the complaint. Therefore, the verdict was properly directed, and the decree is affirmed.

*Decree affirmed.*