(No. 30531.—)
SHEDRICK W. MOSHER *et al.,* Appellants, *vs.* GRACE
THRUSH *et al.,* Appellees.

*Opinion filed January 19, 1949—Rehearing denied March 15, 1949.*

WOOLSEY, STICKNEY & LUCAS, of Galesburg, for appellants.

R. C. RICE, and SIG. B. NELSON, both of Galesburg, for appellees.

Mr. JUSTICE GUNN delivered the opinion of the court:

The will of Shedrick W. Mosher was contested in the circuit court of Knox County, the case was tried before the court without a jury, and the will sustained in all respects. The principal asset involved was land of the decedent, justifying an appeal directly to this court.

At the time of his death, April 14, 1945, Shedrick W. Mosher was ninety-two years old. His last will was executed July 12, 1941, and his advanced age is one of the circumstances urged to invalidate the will. Mosher had no wife surviving, and had no children or descendants of children. His only relatives were the sixteen plaintiffs, who were his nieces and nephews, or their offspring, and the defendants, Grace Thrush and her son, Ivan Thrush, and Allen Brown, niece and grand nephews, respectively. The devises complained of were in clauses 2 and 3 of the will. Clause 2 gave Grace Thrush and her son, Ivan, all of his personal property and three-fourths of his real estate. Clause 3 gave to Allen Brown and his wife, Elsie Brown, one fourth of his real estate. By the concluding clause a bank was made executor of the will. The complaint filed to contest the will was based upon the ground that the testator lacked testamentary capacity, and because the principal beneficiaries, Grace Thrush and Allen Brown, exercised such undue influence upon the testator that the will was not his will but that of others. The court at the close of the plaintiffs' evidence, upon motion, removed the issue of undue influence from the case, and at the close of all of the evidence held that the plaintiffs had failed to prove the deceased lacked testamentary capacity at the time the will was executed.

A large number of witnesses was called by the plaintiffs. Two of these witnesses were of the opinion that the testator was of sound mind and memory at the time of the making of the will, and eight or nine others expressed an opinion that he was not of testamentary capacity. Other

witnesses called failed to disclose sufficient knowledge of the deceased or his transctions to permit them to express an opinion upon mental capacity. (*Lewis* v. *Deamude,* 376 Ill. 219.) Most of the plaintiffs' witnesses based their opinions upon his age, his alleged increased feebleness, his deafness, nearsightedness, his alleged habits of being filthy in his personal appearance, and upon the fact that he developed in late years a throat affliction which constantly interrupted his speech. The testimony of some of the plaintiffs' witnesses was apparently biased by the fact that testator's second wife broke her hip in 1941, was removed to a hospital, and shortly thereafter was declared insane, and sent to an institution. These circumstances were related by several of the witnesses as though they were the result of his mental condition.

The evidence upon the part of the defendants consisted of witnesses who had prepared and witnessed his will, and those who described how he rented his farm land, managed his business, looked after the raising of stock, cattle and hogs, how he bought and sold his farm machinery and supplies, and knew the market prices of grain, and sold accordingly. They testified that he hired help and paid taxes, took his money to the different banks and deposited it, drew it out and made his own checks, and did everything that was necessary to carry on his own business; that he kept his debts paid, and looked forward to the time when he would die, and made provision for payment of his funeral expenses. There is no proof in the record that he ever did any foolish act in the transaction of his own business, but, on the contrary, the proofs show that on one occasion he remembered that years before he had promised a man who had borrowed money from him that he would throw off the last year's interest, that he reminded his debtor of that fact and carried out his promise. This occurred four days before his death, and three and one-half years after the execution of his will.

The appellants in their briefs apparently have abandoned the claim that the deceased lacked testamentary capacity, because they say they do not argue that Shedrick W. Mosher was of unsound mind and memory, that issue having been submitted to the court, and there being some evidence tending to show that he was still of sound mind and memory, even though he was eighty-eight years of age when he executed his will. This statement of counsel for appellants recognizes the well-settled law in Illinois. It has been held that neither eccentricities, (*Hutchinson* v. *Hutchinson,* 152 Ill. 347,) nor miserly or filthy habits, (*Long* v. *Brink,* 353 Ill. 549; *Pendarvis* v. *Gibb,* 328 Ill. 282; *Forberg* v. *Maurer,* 336 Ill. 192,) nor unequal division of property, (*Lewis* v. *Deamude,* 376 Ill. 219; *Langwisch* v. *Langwisch,* 361 Ill. 632; *Turnbull* v. *Butterfield,* 304 Ill. 454,) nor old age and feebleness, (*Hoskinson* v. *Lovelette,* 365 Ill. 21 ; *Forberg* v. *Maurer,* 336 Ill. 192; *Ughetti* v. *Ughetti,* 334 Ill. 398,) of themselves show a lack of testamentary capacity. The evidence discloses the deceased was a man of strong mentality, even to within a short time before his death and the evidence of the plaintiffs was wholly insufficient to disclose a lack of testamentary capacity at the time of executing the will.

Appellants base their main ground of reversal upon an alleged undue influence exercised over the deceased by Grace Thrush, his niece. There is no evidence whatever that Allen Brown exercised any influence over him, and the evidence adduced upon the part of the plaintiffs with respect to the alleged influence exercised by Grace Thrush in this case falls far short of that required by the established rule. The principal facts proved by the contestants were that after the death of his second wife, and before she was buried, two witnesses claimed they were seated in an automobile near the house after dark, and overheard Grace Thrush talking to her uncle, the testator, on the porch,

and that she told him that if he would make a will in her favor she would take care of him, and urged him to go to Galesburg to have a will written. The conversation was interrupted, and the two listeners did not hear the full discussion, but the purport of it was that Mrs. Thrush was willing to take care of him if he made a will, making her the beneficiary.

Another witness testified that several weeks after the will was made he was talking with the testator, and was told Mosher had left the larger portion of his estate to Grace Thrush, and that she had told him she would come and take care of him like a daughter; and further testified that she made several visits out to the testator's place, after this conversation. On the other hand the witness Johnson testified that upon the occasion when he took the decedent to town to look after the burial of his second wife, Mosher stated he intended to leave most of his property to Mrs. Thrush for the reason that after the death of his first wife she had offered to let him build a room on to her house, and let him live there as long as he wanted to, but he had not availed himself of that offer, and would have been better off if he had done so.

The evidence shows without contradiction that a neighbor, Anderson, took the testator to Galesburg, and that the latter went to the office of R. C. Rice, a lawyer, and there consulted with him about preparing a will; that Rice did prepare the will, and it was witnessed by Rice and his stenographer, and that nobody was present except the three of them, and that on no occasion was Mrs. Thrush, or her son Ivan, nor were the other defendants present; and that it was the opinion of Rice that the testator was of sound mind, and knew exactly what he was doing.

The law is settled that to avoid a will upon the ground of undue influence it must be directly connected with the execution of the will itself. It must operate when the will

is made, and must be directed especially toward procuring the will in favor of particular persons, and must be of such a character as to destroy the testator's freedom of will, so as to render his will obviously the result of the mind and brain of some other person. *Ginsberg* v. *Ginsberg,* 361 Ill. 499; *Challiner* v. *Smith,* 396 Ill. 106; *Tidholm* v. *Tidholm,* 397 Ill. 363; *Smith* v. *Peters,* 398 Ill. 108.

It is also established that importunity or persuasion upon the part of a relative, or other person, to make a will in his favor does not constitute undue influence. (*Yoe* v. *McCord,* 74 Ill. 33; *Bevelot* v. *Lestrade,* 153 Ill. 625; *Ryan* v. *Deneen,* 375 Ill. 452.) It is also established that declarations made by a testator in conformity with the provisions of a will are admissible as tending to show lack of undue influence; while declarations contrary to the provisions of the will are not admissible to show anything contrary to the terms of the will. (*Waters* v. *Waters,* 222 Ill. 26; *Kaenders* v. *Montague,* 180 Ill. 300; *Prinz* v. *Schmidt,* 334 Ill. 576; *Parker* v. *Ruley,* 317 Ill. 441.) Since the conversations alleged to have taken place between Mrs. Thrush and the testator amount only to a request or persuasion to execute a will in her favor, and, the record failing to show that either she or any of the beneficiaries were present at the time of the execution of the will, and since none of the statements alleged to have been made by the testator, expressing dissatisfaction with Mrs. Thrush, may be received for the purpose of invalidating the will, there is nothing to show that the beneficiaries under the will of Shedrick W. Mosher had exercised any undue influence of such a nature as would justify a court in setting a will aside.

Counsel for appellants make some inferences that the lawyer who prepared the will was employed by Mrs. Thrush for such purpose, but these inferences are entirely unsupported by the evidence, and have no place in the brief or argument in this court. The evidence in this case shows that while the testator was old, and in some respects feeble,

he was a strong and determined character, and knew whom he liked and whom he disliked, and among the plaintiffs are persons mentioned by him as those he would not have participate under his will. We think the trial court was entirely correct in holding that there was no evidence connecting any of the defendants with the exercise of undue influence upon the testator at the time he executed the will.

It is urged, however, that in many other States, although undue influence must be operative when the will is executed, there are many cases where that requirement is met by some controlling force which operates secretly, but here there is no evidence tending to show that any such secret influence was exercised by the defendants upon the testator.

Some complaint is made of the rulings of the trial court in the reception of evidence generally with regard to obtaining the opinion of witnesses. A lay witness may be permitted to express his opinion, but it is necessary that he relate facts from which a court may determine that he is able intelligently to express an opinion upon mental capacity. (*Lewis* v. *Deamude,* 376 Ill. 219.) Besides, appellants, by waiving their claim of lack of mental capacity, are in no position now to raise that question. We have carefully examined the record in this case and think the court was liberal in allowing witnesses, who knew practically nothing of the testator's business affairs, to give their opinions, and that the court committed no error when it sustained objections to opinions of witnesses who were willing to express them without stating any facts which would make these opinions admissible.

The principal reason that occurs to this court as to why there was a contest of the will of the late Shedrick W. Mosher was because he was a very old man when he executed the same. But the facts disclose he lived almost four years after he had executed the will, that he handled his business, that he was outspoken in his likes and dislikes, and was undoubtedly a man who had a definite opinion

as to how he desired to dispose of his property. The facts shown in the record are wholly insufficient to establish undue influence upon the part of the defendants, or any of them, and insufficient to show a lack of testamentary capacity.

The circuit court of Knox County was correct in finding that the complaint should be dismissed for want of equity.

*Decree affirmed.*